# United States Court of Appeals for the Federal Circuit

———————————

**LAWRENCE J. ACREE,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————

2017-1749

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-31, Senior Judge Alan G. Lance, Sr.

———————————

Decided: June 4, 2018

———————————

NATALIE A. BENNETT, McDermott, Will & Emery LLP, Washington, DC, argued for claimant-appellant.

ALEXANDER ORLANDO CANIZARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., L. MISHA PREHEIM; Y. KEN LEE, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before O'MALLEY, MAYER, and TARANTO, *Circuit Judges.*

MAYER, *Circuit Judge.*

Lawrence J. Acree appeals the judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a decision by the Board of Veterans' Appeals ("board") to dismiss seven of his claims. *See Acree v. Snyder*, No. 15-0031, 2017 WL 393986 (Vet. App. Jan. 30, 2017) ("*Veterans Court Decision*"). We vacate and remand.

## BACKGROUND

Acree served on active duty in the United States Navy from June 1985 to June 1989 and from June 2007 to April 2008. J.A. 9. While in the service, he was deployed to Iraq and was awarded Seabee Combat Warfare medals for his combat service. J.A. 39. Acree was diagnosed with post-traumatic stress disorder ("PTSD") while serving in Iraq. J.A. 99, 237.

After he left the service, Acree filed several claims for service-connected disability benefits with the Louisville, Kentucky Regional Office of the Department of Veterans Affairs ("VA"). J.A. 348–57. Acree appealed eleven of those claims to the board. *See* J.A. 8–17. On September 10, 2014, Acree testified at a hearing before the board. J.A. 10–11. A representative from the Disabled American Veterans ("DAV") organization was present at the hearing. J.A. 2, 146–85. The presiding board member asked Acree if he was withdrawing seven of his eleven claims from the appeal. His colloquy with Acree was as follows:

> [BOARD MEMBER]: The issues certified for appellate consideration today, well there's more issues certified than what we're going to be discussing because some of the issues have been withdrawn. So let me address the issues that have been withdrawn first. The issue of an increased rating for degenerative arthritis of the

tendonitis of the left shoulder. An earlier effective date for service connection for degenerative arthritis with tendonitis of the left shoulder, lumbar strain, [PTSD] and sinusitis. Entitlement to service connection for exposure to Gulf War hazards and entitlement to a total disability rating based on individual unemployability.

You're withdrawing your appeal with respect to all of those issues, is that correct, Mr. Acree?

[ACREE]: Yes.

J.A. 147.

Following this exchange, the presiding board member listed the four issues that would be discussed at the hearing and would "continue to be in appellate status." J.A. 148. He then asked the DAV representative whether he had "correctly identified the issues." J.A. 148. The representative responded: "Yes, thank you, Judge." J.A. 148.

On November 20, 2014, the board issued a final written decision remanding four of Acree's claims for further development. J.A. 10–17. The board dismissed Acree's seven remaining claims,[1] concluding that he had effective-

---

[1] These seven claims were for: (1) "[e]ntitlement to an initial rating in excess of 10 percent for degenerative arthritis with tendonitis of the left shoulder"; (2) "[e]ntitlement to an effective date earlier than April 24, 2008 for the award of service connection for degenerative arthritis with tendonitis of the left shoulder"; (3) "[e]ntitlement to an effective date earlier than April 24, 2008 for the award of service connection for a lumbar strain"; (4) "[e]ntitlement to an effective date earlier than April 24, 2008 for the award of service connection for [PTSD]"; (5) "[e]ntitlement to an effective date

ly withdrawn his appeal with respect to those claims during the September 2014 hearing. J.A. 10–11. Citing 38 C.F.R. § 20.204(a), the board stated that "[a]n appeal may be withdrawn as to any or all issues involved in the appeal at any time before the [b]oard promulgates a decision." J.A. 11.

Acree then appealed to the Veterans Court, arguing that the board "failed to provide an adequate statement of reasons or bases for its determination" that he had effectively withdrawn seven of his claims. J.A. 383 (citation and internal quotation marks omitted). He asserted that a veteran's withdrawal of a claim "is not effective unless the withdrawal 'is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the claimant.'" J.A. 381 (quoting *DeLisio v. Shinseki*, 25 Vet. App. 45, 57 (2011)). According to Acree, remand was required because the board decision "never mentioned or analyzed the *DeLisio* factors," J.A. 384, and the hearing officer "did not explain . . . the consequences of withdrawing any of the claims at issue," J.A. 390. Acree further asserted that since he "ha[d] a long history of taking psychotropic medications," the hearing officer "should have at least inquired as to whether [he] had the capacity to appreciate the consequences of dismissing the claims at issue." J.A. 391.

On January 30, 2017, the Veterans Court issued a decision sustaining the board's determination that Acree had effectively withdrawn seven of his claims. The court acknowledged that under *DeLisio*, 25 Vet. App. at 57, "a

---

earlier than April 24, 2008 for the award of service connection for sinusitis"; (6) "[e]ntitlement to service connection for exposure to Gulf War hazards"; and (7) entitlement to a total disability rating due to individual unemployability resulting from service-connected disability ("TDIU"). J.A. 10–11.

withdrawal is only effective where it is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the [veteran]." *Veterans Court Decision*, 2017 WL 393986, at *2. It stated, however, that because "the [b]oard hearing transcript reflect[ed] that [Acree's] withdrawal of his claims was explicit and unambiguous," there was no need for the board "to delve into further analysis, and the explanation that the [b]oard provided in its statement of reasons or bases [was] adequate." *Id.* The court rejected, moreover, Acree's argument that a board hearing officer has a duty, under 38 C.F.R. § 3.103(c)(2), to explain the consequences of withdrawing a claim. *See Veterans Court Decision*, 2017 WL 393986, at *2–3.

Acree then appealed to this court. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

### A. Standard of Review

This court's authority to review decisions of the Veterans Court is circumscribed by statute. *See id.* Although we are prohibited, absent a constitutional issue, from reviewing "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case," *id.* § 7292(d)(2), we have jurisdiction to review whether the Veterans Court properly interpreted a statutory or regulatory provision, *id.* § 7292(a); *see O'Bryan v. McDonald*, 771 F.3d 1376, 1378–80 (Fed. Cir. 2014). "We review a claim of legal error in a decision of the Veterans Court without deference." *Cogburn v. McDonald*, 809 F.3d 1232, 1235 (Fed. Cir. 2016).

### B. Effective Verbal Withdrawal of a Claim

VA regulations provide that a veteran's "appeal may be withdrawn as to any or all issues involved in the appeal." 38 C.F.R. § 20.204(a). They also include guidelines related to the "[f]orm and content" of a withdrawal:

> Except for appeals withdrawn on the record at a
> hearing, appeal withdrawals must be in writing.
> They must include the name of the veteran, the
> name of the claimant or appellant if other than
> the veteran (e.g., a veteran's survivor, a guardian,
> or a fiduciary appointed to receive VA benefits on
> an individual's behalf), the applicable [VA] file
> number, and a statement that the appeal is with-
> drawn.  If the appeal involves multiple issues, the
> withdrawal must specify that the appeal is with-
> drawn in its entirety, or list the issue(s) with-
> drawn from the appeal.

*Id.* § 20.204(b)(1).

Section 20.204(b)(1) sets out with particularity the re-
quirements for making a written request to withdraw a
claim.  *See id.*  By contrast, although the regulation states
that an appeal may be "withdrawn on the record at a
hearing" before the board, *id.*, it is silent as to what is
required to effectuate such a withdrawal.

In *DeLisio*, however, the Veterans Court determined
that a statement made by a veteran at a board hearing
qualifies as an effective claim withdrawal in accordance
with the regulation only where it is: (1) "explicit";
(2) "unambiguous"; and (3) "done with a full understand-
ing of the consequences of such action on the part of the
[veteran]."  25 Vet. App. at 57; *see Warren v. McDonald*,
28 Vet. App. 214, 218 (2016) (applying the *DeLisio* stand-
ard and concluding that there had been no effective
withdrawal of a claim for sleep apnea because the veteran
had not unambiguously stated that he wished to with-
draw that claim); *Isenbart v. Brown*, 7 Vet. App. 537, 541
(1995) (concluding that a veteran had not withdrawn a
claim for TDIU although he had stated at a "hearing that
the issues were evaluation of his service-connected skin
condition and peptic ulcer and service connection for a
nervous condition and that there were 'no additional

issues'" (citation omitted)). In *DeLisio*, a board hearing officer "listed 15 matters that required adjudication and then asked [the veteran] if he 'got the issues straight,' to which [the veteran] responded that he 'thought' so." 25 Vet. App. at 58 (citation omitted). Although the government argued that the veteran had withdrawn a claim for "left-leg numbness" because it had not been among the fifteen claims listed by the hearing officer, the Veterans Court rejected this contention, concluding that there had been no effective withdrawal because "the transcript reflect[ed] neither an explicit discussion of withdrawal nor any indication that [the veteran] understood that he might be withdrawing claims for benefits for any disabilities not discussed." *Id.*

The *DeLisio* standard for verbal[2] claim withdrawal comports with the "uniquely pro-claimant nature" of the system for adjudicating claims for veterans' benefits. *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000). "The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim." *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009); *see Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) ("The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them."). By requiring that an effective verbal claim withdrawal must be explicit, unambiguous, and undertaken with a full understanding of its consequences, the *DeLisio* standard

---

[2] Resolution of Acree's appeal turns on the requirements necessary for an effective oral withdrawal of a claim at a board hearing. We express no view on the criteria that must be satisfied when a veteran submits a written request to withdraw a claim. *See* 38 C.F.R. § 20.204(b).

provides a bulwark against the inadvertent or uninformed forfeiture of a veteran's rights. *See Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) ("The VA's adjudicatory process is designed to function throughout with a high degree of informality and solicitude for the claimant." (citation and internal quotation marks omitted)); *Jaquay v. Principi*, 304 F.3d 1276, 1280 (Fed. Cir. 2002) (en banc) ("Congress has created a paternalistic veterans' benefits system to care for those who served their country in uniform.").

As they traverse the "labyrinthine corridors of the veterans' adjudicatory system," *Comer*, 552 F.3d at 1369, veterans may lack a complete understanding of the consequences of claim withdrawal. *See* 38 C.F.R. § 20.204(c) ("Withdrawal does not preclude filing a new Notice of Disagreement and, after a Statement of the Case is issued, a new Substantive Appeal, as to any issue withdrawn, *provided such filings would be timely under these rules if the appeal withdrawn had never been filed.*" (emphasis added)). The need to ensure that a veteran understands the consequences of claim withdrawal is particularly acute when, as here, he suffers from psychiatric illness[3] and appears *pro se*[4] before the board. *See Comer*, 552 F.3d at 1369 (explaining that a veteran who "is afflicted with a significant psychological disability" may need additional assistance from the VA); *see also*

---

[3]   Acree was diagnosed with PTSD and an anxiety disorder, J.A. 99, 235–39, 305, and has long been medicated with numerous psychotropic drugs, J.A. 52–53, 84, 89–90, 315.

[4]   Although Acree was accompanied by a DAV aide when he appeared before the board, J.A. 146–48, we have previously recognized that assistance from such an aide "is not equivalent to representation by a licensed attorney," *Comer*, 552 F.3d at 1369.

*Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (explaining that when a claimant at an administrative hearing is "handicapped by lack of counsel" a reviewing court must make a greater effort "to ensure that the claimant's rights have been adequately protected" (citation and internal quotation marks omitted)). We believe *DeLisio* sets a reasonable standard for withdrawals at hearings as contemplated by 38 C.F.R. § 3.103(c)(2) and 38 C.F.R. § 20.204(b)(1), and adopt it as well.

### C. The Veterans Court Decision

Here, the Veterans Court acknowledged that *DeLisio* sets out the proper standard for determining whether a veteran has effectively withdrawn a claim at a board hearing. *See Veterans Court Decision*, 2017 WL 393986, at *2 (stating that under *DeLisio* "a withdrawal is only effective where it is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the [veteran]"). The court determined, however, that since the board "hearing transcript reflect[ed] that [Acree's] withdrawal of his claims was explicit and unambiguous," the board "was not required to delve into further analysis" on the question of whether he understood the consequences of withdrawing his claims. *Id.*

We disagree. Having embraced the *DeLisio* standard for determining whether a veteran has effectively withdrawn a claim at a hearing, the Veterans Court erred by failing to ensure that the board faithfully adhered to that standard. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 375 (1998) ("Reasoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite."); *Schucker v. FDIC*, 401 F.3d 1347, 1354 (Fed. Cir. 2005) (emphasizing that a reviewing court must "act if an agency, without explanation, engages in conduct that is inconsistent with its precedent"); *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002) ("Omission of a relevant

factor required by precedent is both legal error and arbitrary agency action."). Although the court correctly articulated the three-part *DeLisio* standard, *see Veterans Court Decision*, 2017 WL 393986, at *2, it improperly absolved the board of any obligation to apply the third prong of that standard. *See Allentown*, 522 U.S. at 375 (explaining that "a decision that applies a standard other than the one it enunciates" impedes the "consistent application of the law").

At oral argument, counsel for the government stated that it "does not take issue with" the *DeLisio* standard. Oral Argument at 26:16–22, *available at* http://oralarguments.cafc.uscourts./gov/mp3/2017-1749.mp3. Counsel asserted, however, that the Veterans Court properly applied that standard in a "flexible" manner. *Id.* at 26:41–48. This argument is unpersuasive. As discussed previously, *DeLisio* explicitly states that a withdrawal is effective only if it is undertaken with "a full understanding of the consequences of such action on the part of the [veteran]." 25 Vet. App. at 57. No amount of "flexibility" can salvage a decision which apparently gave no consideration to whether this requirement was satisfied. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *Verdon v. Brown*, 8 Vet. App. 529, 533 (1996) ("[W]here it is not clear that a VA claimant has withdrawn a particular claim from an appeal to the [board], it is not sufficient for the [b]oard to conclude that there is an abandonment without providing an adequate statement of reasons or bases to support that conclusion.").

The government further asserts that requiring the board to ascertain whether a veteran understands the

consequences of withdrawing an appeal is inconsistent with 38 C.F.R. § 20.204(a), which provides that a veteran or a veteran's "authorized representative[] may withdraw an appeal." In the government's view, requiring the board to assess whether a veteran understands the consequences of withdrawal would mean that "the veteran would have to testify and answer questions about his withdrawal in every case, instead of relying upon his representative." This argument is unpersuasive. VA regulations contemplate that a veteran will generally be present at a board hearing. *See* 38 C.F.R. § 20.700(b) ("A hearing will not normally be scheduled solely for the purpose of receiving argument by a representative."). Only "if good cause is shown" can a veteran's representative appear before the board without him. *Id.* In the unusual instances in which a representative appears alone before the board and seeks to withdraw one or more claims, it is unlikely to be unduly burdensome for the hearing officer to determine— either by questioning the representative or by contacting the veteran directly—that the veteran firmly intends to withdraw a claim and understands the consequences of claim withdrawal. *See* Board of Veterans' Appeals: Rules of Practice–Appeal Withdrawal, 68 Fed. Reg. 13,235 (Mar. 19, 2003) (explaining that although section 20.204(b) now permits "a representative to execute [a veteran's] desire to withdraw an appeal," the veteran "is the one making the decisions" regarding claim withdrawal).

Our jurisdictional statute, *see* 38 U.S.C. § 7292, authorizes "us to determine whether a Veterans Court decision may have rested on an incorrect rule of law, and, moreover, to determine that the correct rule of law requires factual determinations missing from the [b]oard's decision (and perhaps further factual development), thus precluding Veterans Court affirmance of the [b]oard's decision." *Martin v. McDonald*, 761 F.3d 1366, 1369 (Fed. Cir. 2014) (citations omitted). Because there has been no finding regarding whether Acree understood the conse-

quences of withdrawing his claims, we remand his case for further development.

## CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is vacated and the case is remanded for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

### COSTS

Acree shall have his costs.